UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ELVIS WILLIAMS, an individual, on behalf of himself and others similarly situated,

Plaintiff,

v.

WASHINGTON MUTUAL BANK and DOES 1 through 10, inclusive,

Defendant.

NO. CIV. 07-2418 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

Plaintiff Elvis Williams filed this class action against defendant Washington Mutual Bank after defendant increased his annual percentage rate (APR) and provided notice of such an increase only in its initial disclosures. Defendant now moves to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

I.  Factual and Procedural Background

Defendant issued a credit card to plaintiff on May 17, 2006. (Gorman Decl. Ex. A.)  Before sending plaintiff his new

1

credit card, defendant sent him its Terms Sheet and Account Agreement. (Id.)  Among other disclosures, the Terms Sheet and Account Agreement informed plaintiff that defendant could increase his interest rate if he defaulted on his account ("default APR"). (Id.)  Per the Terms Sheet, Account Agreement, and the September 2006 Important Notice of Changes to the Account Agreement ("Notice of Changes"), plaintiff's October 5, 2006 billing statement informed plaintiff that defendant increased his APR because of a default.  (Compl. ¶ 11.)  Defendant applied the default APR to all purchases plaintiff made during the billing cycle for the October billing statement.  (Id.)  Doing so resulted in the default APR applying to purchases plaintiff made before defendant informed him that it had increased his APR. (Id.)  Between November 6, 2006 and February 6, 2006, defendant further increased plaintiff's default APR.  (Id.)

On September 27, 2007, plaintiff filed this action in state court, alleging that defendant's practice (1) violates the Fair Truth in Lending Act (TILA); (2) constitutes an illegal penalty; (3) violates California's Unfair Competition Law (UCL); (4) breaches its contract with plaintiff; and (5) constitutes a tortious breach of the implied covenant of good faith and fair dealing.  Defendant removed the case to federal court and now moves to dismiss plaintiff's complaint for failure to state a claim.

II.  Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

2

1  U.S. 232, 236 (1974), overruled on other grounds by Davis v.
2  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
3  (1972). To survive a motion to dismiss, a plaintiff needs to
4  plead "only enough facts to state a claim to relief that is
5  plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.
6  1955, 1974 (2007). Dismissal is appropriate, however, where the
7  plaintiff fails to state a claim supportable by a cognizable
8  legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696,
9  699 (9th Cir. 1990); see also Conley v. Gibson, 355 U.S. 41, 47
10 (1957), abrogated on other grounds by Twombly, 127 S. Ct. at 1968
11 (complaint must "give the defendant fair notice of what the
12 plaintiff's claim is and the grounds upon which it rests").
13         In general, the court may not consider materials other
14 than the facts alleged in the complaint when ruling on a motion
15 to dismiss. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir.
16 1996). The court may, however, consider materials if plaintiff
17 has alleged the existence of the materials in his complaint and
18 the authenticity of the materials is not disputed. See Branch v.
19 Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other
20 grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th
21 Cir. 2002) (on a motion to dismiss, courts may properly review
22 "documents whose contents are alleged in the complaint and whose
23 authenticity no party questions, but which are not physically
24 attached to the plaintiff's pleading").
25         Defendant has provided the court with its Terms Sheet,
26 Account Agreement, and Notice of Changes and plaintiff's
27 September 6, 2006 billing statement. (Gorman Decl. Exs. A, B,
28 C.) Plaintiff has alleged the existence of these documents in

3

his complaint (Compl. ¶¶ 11, 25, 37) and neither party questions their authenticity.  Accordingly, the court will consider these materials in deciding this motion.

### A. First Cause of Action: TILA Violations

Unless an exception applies, Regulation Z of TILA requires a creditor to provide written notice whenever a finance charge is changed, including an increase in the consumer's APR because of the consumer's default or delinquency.  12 C.F.R. § 226.9(c)(1) (requiring written notice whenever "any term required to be disclosed under section 226.6 is changed"); id. § 266.6(a) (requiring disclosure of a change in finance charge); id. § 226.9(c)(2) (listing exceptions).  The Official Staff Commentary[1] to Regulation Z explains that notice of a change in terms is not required if "the specific change is set forth initially, such as: Rate increases under a properly disclosed variable-rate plan . . . ."  Id. pt. 226, Supp. I, § 226.9(c), cmt. 1.

Defendant's Terms Sheet and Notice of Changes inform the consumer that "[y]our **APR(s)** may vary based on changes in the Prime Rate" and "[e]ach time you default . . . the **APRs** (including any introductory rate) for new and existing balances in any Balance Category may increase up to the Prime Rate plus 23.74% (the "Default **APR**").  (Gorman Decl. Exs. A, C (emphasis in originals).)  In similar cases brought by plaintiff's counsel, three federal courts have held that substantially the same

---

[1] "Unless demonstrably irrational, Federal Reserve Board staff opinion construing the Act or Regulation should be dispositive . . . ."  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).

4

language[2] in account agreements provided adequate initial notice of a rate increase due to default and thus negated the requirement for notice at the time of default. Evans v. Chase Manhattan Bank USA, N.A., No. 05-3968, 2006 WL 213740, at *2-*3 (N.D. Cal. Jan. 27, 2006); Penner v. Chase Bank USA, N.A., No. 06-3968, 2006 WL 2192435, at *2-*3 (W.D. Wash. Aug. 1, 2006); McCoy v. Chase Manhattan Bank USA, No. 06-107, Civil Minutes, at *5-*6 (C.D. Cal. Aug. 10, 2006).

Proposed rule amendments to TILA also underscore that defendant's practice does not violate the current version of TILA. Specifically, in explaining proposed rule amendments, the Federal Reserve Board states:

> Advance notice currently is not required in all cases. . . . . [N]o change-in-terms notice is required if the specific change is set forth initially by the creditor in the account-opening disclosures. For example, some credit card account agreements permit the card issuer to increase the periodic rate if the consumer makes a late payment. Because the circumstances of the increase are specified in advance in the account agreement, the creditor currently need not provide a change-in-terms notice; under current § 226.7(d) the new rate will appear on the periodic statement for the cycle in which the increase occurs.

72 Fed. Reg. 33009 (June 14, 2007). Therefore, the federal cases addressing the same issue and the Board's recent comments about potential amendments lead this court to conclude that defendant's practice of notifying consumers about default rate increases only in its initial disclosures does not violate TILA.

Plaintiff also argues that, even if initial notice of a

---

[2] Without identifying a single difference, plaintiff inaccurately argues that the agreements were substantially different in those cases. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 1:15-16, 13:13-15.)

5

default rate increase is sufficient under TILA, defendant's notice does not comply with TILA because (1) the notice does not provide the "specific terms" for an increase and (2) the notice gives defendant discretion to decide whether to increase the APR if a consumer defaults.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 5:3-9.)  Plaintiff correctly notes that the Official Commentary requires that notice "be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase (for example, when an increase may occur under the creditor's contract reservation right to increase the periodic rate)."  12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.  Plaintiff's reliance on this language, however, goes too far.

Defendant's Terms Sheet and Notice of Changes do include the required "specific terms" for an increase in the rate due to default.  First, they establish the method used to calculate the default APR and set the maximum default APR at "the Prime Rate plus 23.74%."  (See Gorman Decl. Exs. A, C) (also providing an example of the calculation).)  Second, the disclosures list the specific acts that can constitute a default, thus triggering a potential increase:

> Each time you default under any Washington Mutual Account Agreement because you fail to make at least the Minimum Payment by the Payment Due Date, exceed your Credit Line, or make a payment to us that is not honored by your bank, the **APRs** (including any introductory rate) for new and existing balances in any Balance Category may increase . . . .

6

(See id. Ex. C (emphasis in original).)[3]  This language provides the consumer with notice of the precise acts within the consumer's control that can constitute a default.  Therefore, because the disclosures provide notice of the maximum default APR and the consumer's acts that can trigger an increase, defendant's notice sufficiently provides the "specific terms for an increase."  12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.

Plaintiff argues that the factors defendant lists as considerations when it determines a default APR give defendant too much discretion.  (See id. (listing the factors defendant considers in setting a default APR).)  However, the latitude of defendant's discretion is not fatal because the consumer is on notice of the maximum default APR and the circumstances, all of which are in the consumer's control, that can trigger an increased APR.

Defendant's discretion not to increase a default APR is also distinguishable from the discretion a creditor has under an unlimited reservation of right to increase an interest rate.  Defendant's Terms Sheet establishes the maximum default APR and gives defendant only the discretion to set a default APR below the maximum or decline to impose a default APR.  (Id.)  Contrary to plaintiff's argument, section 2226.9(c)(2) provides that "[n]o notice . . . is required when the change involves . . . a

---

[3] Prior to the Notice of Changes, defendant's Terms Sheet included a "universal default clause," which provided that the consumer would be in default if the consumer was "reported as delinquent on an account with any other creditor." (Id. Ex. A.) This questionable provision, which Nevada rendered illegal in 2007, Nev. Rev. Stat. § 666.410(3)(b), is not at issue in this case.

7

reduction of any component of a finance or other charge." 12 C.F.R. § 226.9(c)(2). Thus, because the Terms Sheet allows defendant to increase the default APR to the maximum stated in the Terms Sheet, defendant's decision not to do so is akin to a reduction of the consumer's finance charge, which does not require notice. See McCoy v. Chase Manhattan Bank USA, No. 06-107, Civil Minutes, at *5, n.4 (C.D. Cal. Aug. 10, 2006) ("A decision not to increase a rate is analytically indistinct from a decision to lower a rate: in both cases the consumer benefits."); see also Penner v. Chase Bank USA, N.A., No. 06-3968, 2006 WL 2192435, at *2 (W.D. Wash. Aug. 1, 2006) (citing Evans v. Chase Manhattan Bank USA, N.A., No. 05-3968, 2006 WL 213740, at *3-*4 (N.D. Cal. Jan. 27, 2006)).

Accordingly, just as three other federal courts recently addressing this very issue have done, this court must grant defendant's motion to dismiss plaintiff's first cause of action for failure to allege facts sufficient to assert a claim under TILA.

B.   Second Cause of Action: Illegal Penalty

Plaintiff alleges that defendant's "contractual provision which purportedly permits it to impose a rate increase retroactively constitutes an illegal penalty provision" and is "unlawful, void, against public policy, and unenforceable." (Compl. 11:14-16, 12:2 (emphasis in original).)[4] The Account

---

[4] Plaintiff argues that Evans, Penner, and McCoy did not address retroactive rate increases (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 20:12-13); however, Evans and Penner both discuss that the plaintiffs in those cases, who were represented by the same counsel as in this case, attacked the retroactive nature of

8

Agreement states that the terms of the agreement are governed by federal law and, "to the extent not preempted by federal law, the State of Nevada." (Gorman Decl. Ex A.)

As discussed above, increasing an APR in the event of a default if notice was initially provided is not illegal under federal law. The retroactive nature of the default APR does not change this conclusion because the initial disclosures provide notice that the default APR will apply to "new and existing balances in any Balance Category." (See Gorman Decl. Ex. C.); see also Evans, 2006 WL 213740, at *2-*3; Penner, 2006 WL 2192435, at *3; 72 Fed. Reg. 33009 (June 14, 2007) (stating that "under current § 226.7(d) the new rate will appear on the periodic statement for the cycle in which the increase occurs").

While plaintiff claims that defendant's practice of calculating the default APR at the end of the month and applying it to that month's billing cycle is an illegal penalty under Nevada law, plaintiff does not cite a single Nevada statute or case to support his position. Contrary to plaintiff's position, Nevada Revised Statute section 97A.140(3) requires only that "[t]he rate of interest charged, and any other fees or charges imposed for the use of the credit card, [] be in an amount agreed upon by the issuer and the cardholder." Nev. Rev. Stat. § 97A.140(3); see also id. § 97A.140(3) (defining "interest"). Section 99.050 also provides that "[p]arties may agree for the payment of . . . any other charges or fees." Id. § 99.050.

---

the rate increases. See Evans, 2006 WL 213740, at *2 ("On a final note, the Court is unimpressed by Plaintiff's complaint[] . . . that the rate increases are retroactive."); Penner, 2006 WL 2192435, at *3.

9

1 Similar to federal law, section 974A.140 neither prohibits
2 initial disclosures from satisfying the disclosure requirements
3 nor prohibits retroactive interest.  Id. § 97A.140.  Therefore,
4 plaintiff has failed to cite, and this court is unaware of, a
5 Nevada statute or case that renders an agreed-upon retroactive
6 default interest an illegal penalty.  Accordingly, the court must
7 grant defendant's motion to dismiss plaintiff's second cause of
8 action.

     C.    Third Cause of Action: Unfair and/or Deceptive Business Practices

California's UCL restricts "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockhead Martin Corp., 29 Cal. 4th 1134, 1143 (2003).  However, "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."  Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 182-83 (1999); Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1154 (2000).  Therefore, plaintiff cannot assert a UCL claim if a federal or state law legalizes defendant's practice.  See Augustine v. FIA Card Servs., N.A., 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (stating that federal or state law can provide a safe harbor).

As discussed above, FILA authorizes defendant's practice because defendant provides sufficient notice in its initial disclosures.  Defendant's practice comes within the UCL's

10

"safe harbor," thus negating plaintiff's ability to challenge the practice under the UCL. Cal-Tech Commc'ns, Inc., 20 Cal. 4th at 182-83. Accordingly, the court must dismiss plaintiff's third cause of action.

### D.  Fourth Cause of Action: Breach of Contract

In his complaint, plaintiff rests his breach of contract claim solely on defendant's alleged violation of Regulation Z. (Compl. ¶¶ 37-42.) Because this court concludes that plaintiff has not stated a claim for violation of Regulation Z, plaintiff's breach of contract claim necessarily fails. See, e.g., Evans v. Chase Manhattan Bank USA, N.A., No. 05-3968, 2006 WL 213740, at *5 (N.D. Cal. Jan. 27, 2006). Accordingly, the court must grant defendant's motion to dismiss plaintiff's fourth cause of action.

### E.  Fifth Cause of Action: Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Nevada law, a "tort action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty, and is limited to 'rare and exceptional cases.'" Great Am. Ins. Co. v. Gen. Builders, Inc., 113 Nev. 346, 354-55 (1997) (internal citations omitted). To constitute a "special relationship," the relationship between the parties must be "characterized by elements of public interest, adhesion, and fiduciary responsibility," such as employment, bailment, insurance, partnership, and franchise relationships. Id. at 355. In his complaint, plaintiff does not allege a special relationship between himself and defendant, nor is this court aware of a

11

Nevada case that recognizes a creditor-consumer relationship as a special relationship.

Still, even if Nevada law recognizes a creditor-consumer relationship as a special relationship, plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing would still be insufficient. Such a claim can prevail only if "'the party in the superior or entrusted position' has engaged in 'grievous or perfidious misconduct.'" Id. Here, the conduct plaintiff alleges amounted to a tortious breach of the implied covenant of good faith and fair dealing is the same conduct supporting his other claims. (Compl. ¶¶ 44-45.) Because FILA authorizes this conduct, it does not amount to "grievous or perfidious misconduct." Accordingly, the court must also grant defendant's motion to dismiss plaintiff's fifth cause of action.

IT IS THEREFORE ORDERED that defendant's motion to dismiss plaintiff's complaint be, and the same hereby is, GRANTED.

DATED: January 10, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE