UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ELVIS WILLIAMS, an individual, on behalf of himself and others similarly situated,

    Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank,

    Defendant,

CHASE BANK USA, N.A.,

    Real Party in Interest.
_____/

NO. CIV. 2:07-2418 WBS GGH

CT. APP. NO. 08-15296

MEMORANDUM AND ORDER RE: LIMITED REMAND FROM NINTH CIRCUIT

----oo0oo----

    Plaintiff Elvis Williams filed this suit against Washington Mutual Bank ("Washington Mutual") in September 2007. Currently before the court on limited remand from the Ninth Circuit is the question of whether defendant Federal Deposit Insurance Corporation ("FDIC") or real party in interest Chase

1

Bank U.S.A., N.A. ("Chase") is the proper successor to Washington Mutual in this case.

I.  Factual and Procedural Background

Plaintiff, a holder of a credit card issued by Washington Mutual, filed this class action against Washington Mutual on September 27, 2007, in Solano County Superior Court. (Docket No. 1.)  In his Complaint, plaintiff alleged that Washington Mutual increased the interest rates on his credit card without notice and levied excess finance charges on his credit card bill.  (Compl. ¶ 11.)  The action was removed to this court on November 9, 2007.  This court subsequently granted Washington Mutual's motion to dismiss plaintiff's Complaint on January 14, 2008.  (Docket No. 24.)  Plaintiff then appealed this court's decision on February 5, 2008.  (Docket No. 25.)

On September 25, 2008, while plaintiff's appeal with the Ninth Circuit was still pending, the Office of Thrift Supervision ("OTS") closed Washington Mutual and appointed the FDIC as receiver for the bank.  (See FDIC Request for Judicial Notice ("RJN") Ex. A.)[1]  On the same day the FDIC and Chase

---

[1] A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The FDIC and Chase's requests to take judicial notice of the Order from the OTS transferring authority to the FDIC receiver and the P&A Agreement are granted, because these are governmental sources whose accuracy cannot be questioned.  See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (taking judicial notice of agreements to which the government was a party); Transmission Agency of N. Cal. v. Sierra Pac. Power Co., 295 F.3d 918, 924 n.3 (9th Cir. 2002) (taking judicial notice of order from a federal agency).

2

1  signed a Purchase and Assumption Agreement ("P&A Agreement"),
2  which allocated Washington Mutual's assets and liabilities among
3  the FDIC in its corporate capacity, the FDIC acting as receiver
4  for Washington Mutual, and Chase.  (Id. Ex. B.)  In the P&A
5  Agreement, Chase explicitly did not assume any liability related
6  to "borrower claims."  (Id. Ex B. § 2.5.)  Specifically, section
7  2.5 of the P&A Agreement states:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by [Chase].

14 (Id.)
15         Chase claims that the FDIC and it began discussions
16 regarding whether "borrower claims" in the P&A Agreement included
17 claims by Washington Mutual's credit card holders after the P&A
18 Agreement was signed.  (Chase Mot. Dismiss 3:17-19.)  In the
19 interim, on December 11, 2008, Chase filed a motion with the
20 Court of Appeals to substitute itself as successor-in-interest
21 for Washington Mutual in this action.  However, Chase alleges
22 that the FDIC and it agreed that "borrower claims" in section 2.5
23 included claims brought by credit card holders after Chase filed
24 the motion to substitute.  (Id. 3:21-23.)  As a result, the FDIC
25 receiver then filed a motion to substitute itself for Washington
26 Mutual and requested a mandatory stay.  On December 31, 2008,
27 Chase moved to withdraw its earlier motion to substitute.
28 Plaintiff opposed both the FDIC's motion and Chase's motion to

3

withdraw, and moved in the alternative to add Chase as a necessary party.

The Ninth Circuit granted the FDIC's motion to substitute and granted a ninety-day stay as required by 12 U.S.C. § 1821(d)(12)(B).  The Ninth Circuit also granted plaintiff's motion to add Chase as a necessary party "without prejudice as to [Chase's] ability to argue that it is not a proper party to this appeal in its answering brief, and for the merits panel to so decide."  (Ninth Cir. Docket No. 32.)

In June 2009, Chase and the FDIC both filed motions to dismiss plaintiff's appeal for lack of subject matter jurisdiction on the ground that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, deprives courts of jurisdiction to hear any claim relating to an act or omission of a failed depository institution if the plaintiff does not exhaust the FDIC claims process.[2]  On September 15, 2009, the Ninth Circuit issued an Order denying Chase and the FDIC's motions without prejudice, and remanded the case to this court for the limited purpose of determining "which party, Chase or the FDIC, is the proper successor to Washington Mutual in this case."  (Docket No. 36.)

II.  Discussion

Under the Federal Deposit Insurance Act, 12 U.S.C. §§

---

[2] Plaintiff was sent a letter from the FDIC on January 13, 2009, which notified him of the FDIC receivership claims process, the deadline for filing such a claim, and the procedure for requesting consideration of a claim after the deadline.  (See Pl.'s Opening Brief Ex. A.)  While plaintiff argues to this court that the claims process is inadequate, this is not a question before this court under the Ninth Circuit's limited remand Order.

4

1811-1832(d), the FDIC may accept appointment as a receiver for any closed insured depository institution. 12 U.S.C. § 1821(c). As receiver, the FDIC succeeds to "all rights, titles powers and privileges of the insured depository institution" and may "take over the assets of and operate" the bank. Id. §§ 1821(d)(2)(A)(i), (B)(i). When appointed as receiver, "the FDIC . . . 'steps into the shoes' of the failed [financial institution]" and operates as its successor. O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994). The FDIC may transfer the failed bank's assets to another bank, separate the failed bank's assets from liabilities, or retain these liabilities through a P&A Agreement. See, e.g., W. Park Associates v. Butterfield Sav. & Loan Ass'n, 60 F.3d 1452, 1458-59 (9th Cir. 1995); Kennedy v. Mainland Sav. Ass'n, 41 F.3d 986, 990-91 (5th Cir. 1994); Payne v. Sec. Sav. & Loan Ass'n, 924 F.2d 109, 111 (7th Cir. 1991). No liability is transferred from a closed bank to an assuming bank without an express transfer of liability. See Kennedy, 41 F.3d at 990-91; Payne, 924 F.2d at 111; Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1109 (11th Cir. 1990); Village of Oakwood v. State Bank & Trust Co., 519 F. Supp. 2d 730, 739 (N.D. Ohio 2007), aff'd 539 F.3d 373 (6th Cir. 2008).

  A. The P&A Agreement

    Whether Chase or the FDIC is the proper successor to Washington Mutual turns on interpretation of the P&A Agreement between the FDIC and Chase. The P&A Agreement states that it is governed by federal law, and in the absence of controlling federal law, in accordance with Washington law because Washington Mutual's main office was located in Seattle, Washington. (See

5

1  FDIC RJN Ex. B § 13.4.)  As there is no federal law governing
2  interpretation of contracts, the interpretation of the contract
3  must be controlled by Washington law.  See Vernon, 907 F.2d at
4  1109; City & Suburban Mgmt. Corp. V. First Bank of Richmond, 959
5  F. Supp. 660, 664 (D. Del. 1997); Capital Guidance Associates IV
6  v. NCNB Tex. Nat'l Bank, No. H-90-331, 1991 WL 210740, at *9
7  (S.D. Tex. Oct. 7, 1991); see also FDIC v. Bank of Am. Nat'l
8  Trust & Sav. Ass'n, 701 F.2d 831, 834 (9th Cir. 1983) ("[P]arties
9  may agree as to the law to be applied to their contract.").

Under Washington law, "[t]he purpose of contract interpretation is to determine the intent of the parties." Navlet v. Port of Seattle, 164 Wash. 2d 818, 842 (2008); see Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wash. 2d 656, 674 (1996) ("The touchstone of contract interpretation is the parties' intent."). Washington contract law "determine[s] the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash. 2d 493, 504 (2005). The parties' intent may also be determined by "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." Tanner Elec. Coop., 128 Wash. 2d at 674 (citation and internal quotation marks omitted).

Under Article II of the P&A Agreement, entitled "Assumption of Liabilities," Chase explicitly did not assume any

6

1  liability for "borrower claims" associated with the lending
2  practices of Washington Mutual prior to its failure.  (FDIC RJN
3  Ex. B § 2.5.)  These claims instead remained with the FDIC
4  receiver.  According to the P&A Agreement, borrower claims are
5  any form of relief to a borrower that is "related in any way to
6  any loan or commitment to lend made by [Washington Mutual] prior
7  to failure . . . or otherwise arising in connection with
8  [Washington Mutual's] lending or loan purchase activities . . .
9  ."  (Id.)  Chase and the FDIC contend that this includes
10 plaintiff's claims related to Washington Mutual's credit card
11 business, since Washington Mutual's extension of unsecured credit
12 to plaintiff in the form of his credit card was a "loan,"
13 "commitment to lend," and arose in connection with Washington
14 Mutual's lending activities.
15         Plaintiff argues that Washington Mutual's credit card
16 business is not a loan according to the definition of "Loans" in
17 Article I of the P&A agreement.  However, the definitions in
18 Article I only apply when the term at issue is capitalized in the
19 agreement.  (See id. Art. I.) ("Capitalized terms used in this
20 Agreement shall have the meanings set for in this Article I . . .
21 .").  In section 2.5 the word "loans" is not capitalized and
22 appears capitalized in other sections of the P&A Agreement.
23 (See, e.g., id. §§ 3.4(e), 6.1(a)(iv).)  Therefore, irrespective
24 of whether the definition of "Loans" in Article I excludes credit
25 card lending, the Article I definition does not control this
26 court's interpretation of section 2.5.  Washington Mutual's
27 extension of credit to plaintiff loaned him money to purchase
28 goods, which he then had to pay back to Washington Mutual plus

7

interest.  In fact, the dispute at the center of this suit is precisely how much money plaintiff owed to Washington Mutual and the legitimacy of the terms Washington Mutual applied to the money it loaned to plaintiff.

Even if Washington Mutual's credit card services are not loans under the P&A Agreement, they are certainly a "commitment to lend" and arise out of Washington Mutual's lending activities.  Washington Mutual's credit card account with plaintiff was a commitment to lend plaintiff funds to purchase goods and services, which plaintiff then had to pay back to Washington Mutual in accordance with his account agreement.  Plaintiff contends that his credit card account was not a commitment to lend because Washington Mutual could have arbitrarily denied him credit any time under the terms of his account agreement.  This characterization of the account agreement is incorrect.  While plaintiff's credit card agreement did indicate that Washington Mutual had the right to "close [plaintiff's] account . . . for any reason not prohibited by law," the agreement also mandated that Washington Mutual had to give any notice "required by law" to plaintiff to do so.  (See Docket No. 9, Gorman Decl. § 15.)  Plaintiff's line of credit could therefore not be cancelled arbitrarily, but only upon receipt of appropriate notice per the agreement.

Although Washington Mutual's extension of credit was not guaranteed in perpetuity and could be limited or terminated under the terms of the agreement, this does not mean the issuance of plaintiff's credit card was not a commitment to lend.  Any contractual agreement may contain limitations on the benefits of

8

the contract under various conditions, including the ability to terminate the agreement with notice. See, e.g., Chodos v. W. Publ'g Co., 292 F.3d 992, 997 (9th Cir. 2002); Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002). Washington Mutual's commitment to lend plaintiff funds was no different. Even if, as plaintiff contends, Washington Mutual arguably could have reduced plaintiff's credit limit to zero, this does not change the fact that Washington Mutual committed to, and in fact did, lend plaintiff funds.

In Yeomalakis v. FDIC, 562 F.3d 56 (1st Cir. 2009), the First Circuit addressed whether the FDIC or Chase was the appropriate successor in interest to Washington Mutual under the same P&A Agreement for claims identical to those alleged by plaintiff. The First Circuit found that the FDIC receiver was the correct successor because claims related to Washington Mutual's credit card business were "borrower claims" under the P&A Agreement. Yeomalakis, 562 F.3d at 60. The First Circuit's interpretation of the P&A Agreement confirms that plaintiff's claims qualify as "borrower claims" under section 2.5, and that the FDIC receiver is therefore the appropriate defendant in this action.

Plaintiff nonetheless contends that Chase assumed liability for credit card claims in section 4.2 of the P&A Agreement, entitled "Agreement with Respect fo Debit and Credit Card Business," which states:

> The Assuming Bank agrees to honor and perform, from and after Bank Closing, all duties and obligations with respect to the Failed Bank's debit and credit card business, and/or processing related to debit and credit cards, if any, and assumes all outstanding extensions of

9

1       credit with respect thereto.

(FDIC RJN Ex. B § 4.2.)  Plaintiff contends that Chase's assumption of "all duties and obligations" with respect to Washington Mutual's credit card business includes assumption of liability for any claims against Washington Mutual for its previous business.

      Obviously section 4.2 can be read two different ways.  As plaintiff argues, "from and after Bank Closing" could be read to modify "honor and perform," in which case Chase agreed to honor and perform all duties and obligations of Washington Mutual once it closed, irrespective of when these liabilities were incurred.  Alternatively, "from and after Bank Closing" could modify "duties and obligations."  Under this interpretation, advanced by Chase and the FDIC, Chase only prospectively agreed to undertake the duties and obligations of Washington Mutual's credit card business incurred after Bank Closing.

      Reading the P&A Agreement as a whole, it is clear that section 4.2 only governs Chase's prospective duties and does not transfer any previously held liabilities from Washington Mutual to Chase.  Plaintiff's reading of section 4.2 would effectively nullify section 2.5, since Chase would be obligated to assume all duties and obligations incurred by Washington Mutual related to its credit card business, including those retained by the FDIC as "borrower claims."  Moreover, were section 4.2 meant to transfer the liability for claims relating to Washington Mutual's previous credit card lending to Chase, the section would have logically appeared in Article II, which deals with "Assumption of

Liabilities," rather than Article IV, entitled "Assumption of Certain Duties and Obligations," which deals with the prospective duties of Chase with respect to Washington Mutual's business operations. See Schulken v. Wash. Mut. Bank, No. C 09-02708 JW, 2009 WL 4173525, at *4 (N.D. Cal. Nov. 19, 2009). Accordingly, section 4.2 cannot form the basis for a finding that Chase is the appropriate successor in interest to plaintiff's claims against Washington Mutual.

For section 4.2 to transfer liability for claims relating to Washington Mutual's credit card business to Chase, the section must contain an explicit transfer of liability. See Kennedy, 41 F.3d at 990-91; Payne, 924 F.2d at 111; Vernon, 907 F.2d at 1109; Oakwood, 519 F. Supp. 2d at 739. "The purchaser of an asset from a failed institution is not liable for the conduct of the . . . [failed] institution unless the liability is transferred and assumed." Kennedy, 41 F.3d at 990. "Absent an express transfer of liability by the [receiver] and an express assumption of liability by [the purchasing bank], FIRREA directs that [the receiver] is the proper successor to the liability at issue . . . ." Payne, 924 F.2d at 111.

The reason for this rule is clear--"an assuming bank would rarely be inclined to enter a P & A agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future." Village of Oakwood, 519 F. Supp. 2d at 738; see also Vernon, 907 F.2d at 1109 ("Undoubtably very few, if any, banks would enter into purchase and assumption agreements with a federal receiver if the successor banks had to assume the latent

claims of unknown [sic] magnitude of shareholders . . . ."). Accordingly, given that no section of the P&A Agreement explicitly transfers liability for claims related to Washington Mutual's credit card business to Chase, any liability for such claims remained with the FDIC receiver.

It is clear that plaintiff's claims are premised solely on the previous acts of Washington Mutual and not any improper conduct by Chase. While Chase assumed the credit card accounts of Washington Mutual's members, liability for any claims arising out of these accounts before the failure of Washington Mutual remained with the FDIC. The P&A Agreement contains no explicit transfer of the liabilities from Washington Mutual's credit card business to Chase and the parties to the agreement both agree that they intended for liability for credit card claims to be included as "borrower claims." Given these circumstances, this court sees no reason to depart from the First Circuit's finding that plaintiff's claims are governed by section 2.5 of the P&A Agreement and that the FDIC therefore is the proper successor to Washington Mutual in this case. See Yeomalakis, 562 F.3d at 60.

B.  Waiver

Plaintiff lastly argues that Chase waived its right to assert that the FDIC is the proper successor to Washington Mutual because Chase claimed that it was the appropriate successor in its withdrawn motion to substitute before the Ninth Circuit. The Court of Appeals did not adopt Chase's previous position, as the Ninth Circuit did not rule on the motion and added Chase as a party to this action without prejudice to its ability to argue that it is not a proper party. (Ninth Cir. Docket No. 32.) This

court's role is to simply determine who is the proper successor to Washington Mutual in this action, not to rule on any alleged procedural deficiencies in Chase's argument.  Accordingly, the court believes this question is appropriately left to the Ninth Circuit given the limited scope of the question before this court.

THE COURT THEREFORE FINDS that the FDIC is the proper successor to Washington Mutual in this action;

AND IT IS ORDERED that the parties shall lodge a copy of this Order with the Court of Appeals for the Ninth Circuit within five days of the date of this Order.

DATED:  December 22, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE